# CHARLESTON.

## BACK & GREIWE *v.* SMITH.

Submitted June 12, 1908.    Decided October 26, 1909.

1. SALES—*Constructive Delivery.*

   A constructive delivery of goods sold may be substituted for an actual delivery thereof only when such constructive delivery is in pursuance of agreement by the parties or an established custom.    (p. 49.)

2. SAME.

   If a proposed constructive delivery is to operate as an actual delivery of goods sold, the goods must be in a condition to be delivered without more to be done by the vendor either as regards the price or the quantity.    (p. 49.)

3. SAME.

   There can be no constructive delivery of a specified quantity of goods when that quantity is not susceptible of an actual delivery at the place where the proposed constructive delivery is intended to operate.    (p. 49.)

Error to Circuit Court, Marion County.

Action by Joseph Back and another, co-partners, against John

E. Smith. There was a verdict for plaintiffs, and the court having set the same aside, and awarded a new trial, plaintiffs bring error.

*Affirmed.*

B. L. Butcher, for plaintiffs in error.

W. S. Meredith, for defendant in error.

ROBINSON, JUDGE:

Plaintiffs, wholesale liquor dealers in Cincinnati, contracted with defendant, a retail liquor dealer at Fairmont, to deliver to him, at a stipulated price, f. o. b. cars at distillery, a named quantity of a specified brand of rye whiskey, to be bottled in bond. The distillery at which this particular brand of whiskey was produced was located in Pennsylvania. Plaintiffs caused the amount of whiskey they had contracted to furnish defendant to be bottled and cased at this distillery. They then consigned the whiskey to themselves at Fairmont, and received bill of lading from the railway company for such shipment. The bill of lading was sent to the place of business of plaintiffs in Cincinnati. They wrote on it an order for the delivery of the consignment to defendant, and mailed it to him. No other notice was given him as to the manner of the shipment. Defendant did not examine the bill of lading closely. He supposed that it was one of a direct shipment to him as contemplated by the contract. He made repeated inquiries at the freight station for a consignment of whiskey to him, and was told none had arrived. The whiskey did arrive, consigned to plaintiffs, but they were wholly unknown by those in charge of freight deliveries at Fairmont. Upon the arrival of the whiskey, the shipment was five cases short. Other cases were damaged or their contents destroyed. The shipment not being called for in reasonable time, it being impossible to notify the consignees because they were not known, and the carrier having no notice from plaintiffs that it should deliver the consignment to defendant, the whiskey was sent to a storage house. The shipment was afterwards traced by plaintiffs, and located there. Defendant refused to receive it. Plaintiff sued him for the amount he had contracted to pay for the delivery they had contracted to make. A trial resulted in a verdict for plaintiffs. The court,

upon motion of the defendant, set aside the verdict and awarded a new trial. Plaintiffs have prosecuted this writ of error to such action of the court.

Was there delivery to defendant? This question controls the case. If there was no delivery of the whiskey sold, the contract of sale was not performed, and defendant is not liable for the purchase price. We answer the question in the negative. The verdict was rightly set aside.

By shipping to themselves plaintiffs retained the title to and the possession of the whiskey. They made the carrier their agent. They so shipped the whiskey, notwithstanding the contract of sale contemplated a direct consignment to defendant. If they had directly consigned to him that which they sold him, a delivery to the carrier would have been a delivery to him. But there was no such delivery. Now, plaintiffs must rest their case, as they do, upon the assertion that the mailing of the bill of lading to defendant, with the order thereon directing delivery of the consignment to defendant, was a delivery to him of the liquor sold. It is not shown, however, that defendant agreed to such constructive delivery, or that the same was established by custom or usage. And it appears that before this order became effective a portion of the whiskey had been lost or destroyed. Such order, therefore, if it had been agreed to by defendant, or if it had been in pursuance of a recognized custom, could not have transferred title and possession to him of all that which he had purchased. It could not operate as a delivery of that which plaintiffs had contracted to deliver because the order could not produce the quantity contracted to be furnished. Even if the order had been assented to by defendant and promptly presented at the freight station, the contracted quantity of whiskey could not have been delivered, as that quantity at no time was there. In no event was it a tender of the quantity of goods sold. Defendant was entitled to delivery of the full quantity, or had the right to refuse payment under the contract. *Greenbrier Lumber Co.* v. *Ward,* 36 W. Va. 573 (15 S. E. 89). Clearly there could be no constructive delivery by the order, because there could be no actual delivery of the quantity that order was supposed to represent. Defendant never consented to receive a less quantity.

In *Pleasants* v. *Pendleton,* 6 Rand, 473 (18 Amer. Dec. 726).

Judge Brooke wrote: "It is a settled rule of the common law, that property in personal chattels passes only by actual delivery of the thing, except in cases in which some equivalent delivery is agreed upon by the parties, or is established by custom or usage, in which a virtual delivery is substituted for actual delivery of the thing. But, in these cases, unless the thing was in a condition to be delivered without more to be done by the vendor, either as regarded the price, or the quantity, as there could be no actual delivery until that was done by the vendor, so there can be no virtual delivery equivalent to it. And all the cases on the subject appear to me to have turned on the enquiry, whether, from the nature of the subject, it was, or was not, in a deliverable condition, that is, without more to be done by the vendor affecting the price or the quantity of the thing to be delivered." And in *Stevens* v. *Stewart,* 3 Cal. 140, it is held: "A delivery of an order for goods is only considered as a delivery of the goods themselves, where they are susceptible of an immediate delivery."

The order setting aside the verdict and awarding a new trial is affirmed.

*Affirmed.*